## Commonwealth of Massachusetts

BRISTOL, ss.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2073CV00548

Joseph F. Krowski, Jr.
_____, PLAINTIFF(S),

v.

Hunter Warfield of New England, Inc &
Trans Union, LLC
_____, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO  Hunter Warfield of New Englad, Inc. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the New Bedford Superior Court.
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.    **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.    **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: New Bedford Superior
    a.   Filing your **signed original** response with the Clerk's Office for Civil Business, _____ Court, 441 County St, 1st Fl., New Bedford, MA 02740 (address), by mail or in person, **AND**
    b.   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
    Jason Howard, Esq. 30 Cottage St Brockton, MA 02301 .

3.    **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rulesofcourt.

Joseph P Casey

A true copy Attest:

Deputy Sheriff Suffolk County

9-1-20

4. **Legal Assistance.** You may wish to get legal help from a lawyer.  If you cannot gel legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss.  You should refer to yourself as the "Defendant."

                                                           August 17
Witness Hon. Judith Fabricant, Chief Justice on _____, 20 20 . (SEAL)

Marc J. Santos,
Clerk/Magistrate

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

        I hereby certify that on _____, 20_____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____
_____
_____
_____

Dated:_____, 20____.        Signature:_____

**N.B.    TO PROCESS SERVER:**

        **PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX -
BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE
DEFENDANT.**

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss

NEW BEDFORD SUPERIOR COURT
DOCKET NO. 2073 CV 00548

|  |  |
|---|---|
| JOSEPH F. KROWSKI JR., <br>     Plaintiff <br><br> v. <br><br> HUNTER WARFIELD OF <br> NEW ENGLAND, INC., and <br> TRANS UNION, LLC, <br>     Defendants | **VERIFIED COMPLAINT FOR** <br> **DAMAGES AND INJUNCTIVE RELIEF** <br> **WITH JURY DEMAND** |

## PARTIES

1.  The Plaintiff, Joseph F. Krowski Jr. ("Plaintiff" or "Krowski"), is an individual and resident of Easton, Bristol County, Massachusetts.

2.  The Defendant Hunter Warfield of New England, Inc. ("Hunter Warfield") is a business organization engaged in the business of debt collection. Its principal office is located in Tampa, Florida. Its Registered Agent within the Commonwealth is located in Boston, Suffolk County, Massachusetts.

3.  The Defendant Trans Union LLC ("Trans Union") is a business organization engaged in the business of credit reporting and information services. Its principal office is located in Chicago, Illinois. Its Registered Agent within the Commonwealth is located in Boston, Suffolk County, Massachusetts.

## VENUE

4.  The Plaintiff is a resident of Bristol County. Venue is therefore proper in the Bristol County Superior Court.

1

## FACTUAL ALLEGATIONS

5. The Plaintiff repeats and re-avers the allegations of paragraphs one (¶1) through five (¶5) of this Complaint as if each were more fully set forth and alleged below.

6. The Defendant Hunter Warfield is a debt collection agency.

7. On or about April 23, 2020, the Defendant Hunter Warfield sent correspondence to Mr. Krowski alleging a debt of $6,058.84.

8. A true and accurate copy of the April 23, 2020, correspondence is attached as Exhibit A.

9. According to the April 23, 2020, correspondence, the Defendant Hunter Warfield stated that "If this debt is not resolved, it may be reported to one or more of the following national credit reporting agencies: Equifax, TransUnion and Experian."

10. The Defendant Hunter Warfield alleged the debt was owed to "The Reef" as the original and current creditor.

11. Mr. Krowski does not and never has owed a debt to "The Reef."

12. Mr. Krowski disputed the debt with the Defendant Hunter Warfield and demanded verification.

13. The Defendant Hunter Warfield was and remains unable to provide verification of the debt.

14. This is because no such debt exists.

15. "The Reef" is more formally known was "Fort Myers Reef Acquisitions, LLC." It owns apartments in Fort Myers, Florida.

16. Mr. Krowski considered an apartment at "The Reef" for his son.

17. Mr. Krowski's son viewed an apartment but declined to reside there.

18. Neither Mr. Krowski nor his son signed any lease documents with "The Reef."

2

19. The Defendant Hunter Warfield produced two documents: a "Student Housing Lease Contract" and a "Lease Contract Guaranty."

20. A true and accurate copy of the "Student Housing Lease Contract" is attached as Exhibit B.

21. A true and accurate copy of the "Lease Contract Guaranty" is attached as Exhibit C.

22. Neither document has Mr. Krowski's signature.

23. This is because Mr. Krowski did not and never has signed either document.

24. It is a fundamental principle of law that neither a lease nor a lease guaranty has legal effect unless in writing and signed by the person to be charged.

25. The "Student Housing Lease Contract" states at the top of the first page, "This is a binding document. Read carefully before singing." <u>See</u> Exhibit B.

26. The "Lease Contract Guaranty" document itself clearly states on the top of the first page, "Do not sign (emphasis added) this form unless you understand that you have the same liability as all residents for rent and other monies owed." <u>See</u> Exhibit C.

27. Mr. Krowski did not sign the forms; therefore, he has no liability or obligation under the express terms of the documents.

28. Consistent with the language of its April 23, 2020, correspondence, the Defendant Hunter Warfield reported the falsely claimed debt to the Defendant Trans Union.

29. The Defendant Trans Union has posted the falsely claimed debt to Mr. Krowski's credit report, thereby negatively impacting Mr. Krowski's credit report and score.

30. Mr. Krowski, through Counsel, attempted to resolve the dispute with the Defendant Hunter Warfield by written correspondence dated June 16, 2020, delivered by certified mail.

31. A true and accurate copy of the June 16, 2020, correspondence with proof of service is attached as Exhibit D.

32. More than thirty (30) days has passed since the correspondence was delivered on June 20, 2020.

33. The Defendant Hunter Warfield has not withdrawn its claim that Mr. Krowski owes a debt.

34. The Defendant Hunter Warfield has not removed its false claim of a debt owed from Mr. Krowski's credit report published by the Defendant Trans Union.

35. The Defendant Trans Union continues to publish the falsely claimed debt on Mr. Krowski's credit report and score.

## COUNT I
### Defendant Hunter Warfield
### Unfair and Deceptive Debt Collection Practices

36. The Plaintiff repeats and re-avers the allegations of paragraphs one (¶1) through thirty-five (¶35) of this Complaint as if each were more fully set forth and alleged below.

37. The Defendant Hunter Warfield's conduct alleged in this Complaint is in violation of the Federal Fair Debt Collection Practices Act ("FDCPA"). See 15 USC §1692, et seq.

38. The Defendant Hunter Warfield's conduct alleged in this Complaint is also in violation of the "Debt Collection Regulations" of the Attorney General for the Commonwealth. See 940 CMR 7.00, et seq.

39. Both the FDCPA and the Debt Collection Regulations of the Attorney General for the Commonwealth prohibit "the collection of any amount…unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

40. The debt the Defendant Hunter Warfield claims Mr. Krowski owes is not supported by a signed document and is not permitted by law.

41. The Defendant Hunter Warfield is acting in bad faith.

42. The Plaintiff has suffered and will continue to suffer great prejudice, irreparable harm, and damages as a consequence of the Defendant Hunter Warfield's conduct alleged in this Complaint.

**Wherefore**, the Plaintiff, Joseph F. Krowski Jr., demands judgement against the Defendant Hunter Warfield on Count I of this Complaint as follows:

a.  Judgement in the full amount of his damages, plus statutory damages, civil penalties, attorney's fees, interest, and costs;

b.  Entry of an Order enjoining, temporarily during the pendency of this action and then permanently, the Defendant Hunter Warfield from reporting the disputed debt to any and all credit reporting agencies, including, but not necessarily limited to, the Defendant Trans Union; and

c.  Any further relief in Law or in Equity the Court deems equitable, fair, reasonable, and just.

## COUNT II
### Defendant Hunter Warfield
### Mass. Gen. L. ch. 93A Violation

43. The Plaintiff repeats and re-avers the allegations of paragraphs one (¶1) through forty-two (¶42) of this Complaint as if each were more fully set forth and alleged below.

44. At all times materially relevant to this Complaint, the Plaintiff, an individual not engaged in either trade or commerce, was entitled to the full protections of the Massachusetts Consumer Protection Law, Mass. Gen. L. ch. 93A, and the regulations of the Massachusetts Attorney General promulgated thereunder.

45. The Defendant Hunter Warfield, a business organization engaged in trade or commerce within the Commonwealth of Massachusetts, is subject to the provisions of Mass. Gen. L. 93A and the regulations of the Massachusetts Attorney General promulgated thereunder.

46. On or about June 16, 2020, the Plaintiff, through Counsel, made written demand for relief pursuant to Mass. Gen. L. ch. 93A of the Defendant Hunter Warfield.

47. The Plaintiff's written demand for relief was served on the Defendant Hunter Warfield by means of certified mail, return receipt requested.

48. A true and accurate copy of the Plaintiff's June 16, 2020, written demand for relief is attached as Exhibit D.

49. The factual allegations of Exhibit D are herein incorporated by reference.

50. The Defendant Hunter Warfield did not respond in writing to the Plaintiff's demand for relief within thirty (30) days.

51. By its conduct alleged in this Complaint as well as in the Plaintiff's June 16, 2020, written demand for relief, the Defendant Hunter Warfield has committed unfair and deceptive acts and practices towards the Plaintiff in violation of Mass. Gen. L. ch. 93A and the Regulations of the Attorney General.

52. The Defendant Hunter Warfield has acted willfully, knowingly, intentionally, and in bad faith.

53. As a direct and proximate result of the Defendant Hunter Warfield's unfair and deceptive acts and practices, the Plaintiff has suffered and will continue to suffer great prejudice, irreparable harm, and damages.

**Wherefore**, the Plaintiff, Joseph F. Krowski Jr., demands judgment against the Defendant Hunter Warfield on Count II of this Complaint as follows:

 a. That damages caused to the Plaintiff be established and that an execution issue for treble the amount thereon;

 b. That the Plaintiff be awarded reasonable attorney's fees for costs of this action; and

 c. Any further relief in Law or in Equity the Court deems equitable, fair, reasonable, and just.

## COUNT III
### Unfair and Deceptive Credit Report
### Defendant Trans Union

54. The Plaintiff repeats and re-avers the allegations of paragraphs one (¶1) through fifty-three (¶53) of this Complaint as if each were more fully set forth and alleged below.

55. The Defendant Trans Union has published and continues to publish the fraudulent debt of Defendant Hunter Warfield on the Plaintiff's credit report and score.

56. The Defendant Trans Union's reporting of the fraudulent debt has caused and will continue to cause substantial and irreparable harm to the Plaintiff and his credit score causing him damages.

**Wherefore,** the Plaintiff, Joseph F. Krowski Jr., demands judgment against the Defendant Hunter Warfield on Count III of this Complaint as follows:

a. Issue a short order of notice to all interested parties for an immediate hearing regarding a Preliminary Injunction enjoining the Defendant Trans Union to remove the fraudulent debt of Hunter Warfield from the Plaintiff's credit report and score;

b. Issue a Permanent Injunction enjoining the Defendant Trans Union to remove the fraudulent debt of Hunter Warfield from the Plaintiff's credit report and score;

c. Award damages to the Plaintiff, plus statutory damages, civil penalties, attorney's fees, interest, and costs; and

d. Order any further relief in Law or in Equity the Court deems equitable, fair, reasonable, and just.

## JURY DEMAND

57.  The Plaintiff demands a jury trial on each and every count
of this Complaint.

<div style="margin-left: 40%">

Plaintiff,
By his Attorney,

_____

JASON C. HOWARD, ESQUIRE
30 Cottage Street
Brockton, MA 02301
(508) 587-3701
BBO: 654172

</div>

Dated: August 10, 2020.

## PLAINTIFF'S CERTIFICATE OF VERIFIED COMPLAINT

I, Joseph F. Krowski Jr., state under the pains and
penalties of perjury that I am the Plaintiff in the Complaint. I
have read the allegations of fact contained in this Verified
Complaint and do hereby certify that the allegations are true,
accurate, and omit not material facts to the best of my personal
knowledge, information, and belief.


JOSEPH F. KROWSKI JR.                    DATED: 8/10/20

9

# EXHIBIT A

# HUNTER ⚔ WARFIELD

4620 Woodland Corporate Blvd
Tampa, FL 33614
866-494-9902

| | |
|---|---|
| Original Creditor Name | The Reef |
| Current Creditor Name | The Reef |
| Current Creditor Address | 2200 W 5th Ave, Suite 120 Columbus, OH 43215 |
| Creditor Account | 7303-A |
| Hunter Warfield Account | 7964418 |
| Interest | $53.92 |
| Current Balance | $6,058.84 |

April 23, 2020

JOSEPH KROWSKI
10 KENBANE DR
SOUTH EASTON, MA 02375-1684

Enclosed is verification of the debt.

As of the date of this letter you owe $6,058.84. Because of interest at the rate of 4.75%, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you. Please contact our office for your payoff.

If this debt is not resolved, it may be reported to one or more of the following national credit reporting agencies: Equifax, TransUnion and Experian. If your debt is reported to the credit bureaus this could adversely affect your credit.

Should you need to contact me for any reason, I can be reached by dialing 866-494-9902. Hours of operation Mon – Fri 8am to 5pm EST.

Sincerely,
Hunter Warfield of New England, Inc.

This communication is made for the limited purpose of responding to your dispute and is NOT an attempt to collect a debt.
**See reverse side for important information.**
4620 Woodland Corporate Blvd | Tampa, FL 33614
supportservices@hunterwarfield.com | www.payhwi.com

9325021/VOD/143455

**EXHIBIT B**

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9



# STUDENT HOUSING LEASE CONTRACT



Date of Lease Contract: **September 18, 2019**
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract is between *you*, the resident:

Julian Krowski

and us, the owner: **Fort Myers Reef Acquisitions, LLC**

*(name of apartment community or title holder).*

The terms "you" and "your" refer to the resident listed above, and a person authorized to act on behalf of a resident in the event of that resident's death or incapacity. The term "co-resident" refers to an individual who is sharing your bedroom or occupying another bedroom in the same Apartment as a resident under a separate Lease Contract with us. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor must be executed.

The ☒ Owner or ☐ Manager of these Apartments is **Fort Myers Reef Acquisitions, LLC**

whose address is **10121 Shephard Street, Fort Myers, FL 33967**
. Such person or company is authorized to receive notices and demands in the landlord's behalf.

A lease termination notice must be given in writing and comply with the terms and conditions as set forth in Paragraph 4 (Lease Term) and 39 (Move-Out Notice).

Notice to the tenant must be delivered to the Resident's address as shown above.

**2. APARTMENT.** You've agreed to rent a bedroom in the Apartment referenced below for use as a private residence only.

The Apartment is located at **10121 Shephard Street**
(street address), in
**Fort Myers**
*(city)*, Florida, **33967** *(zip code)*, ☐ Apartment Number
, or, ☒ an Apartment (at the address referenced above) to be assigned by us in the future (the "Apartment"). Your assigned floorplan will be **D1 — Phase I**
.

Your bedroom and other exclusive use areas are described in paragraph 11 (Allocations and Exclusive Use Areas).

**Exclusive Use Areas and Joint Use Areas.** We ☐ may or ☒ may not *(check one)* assign another person to share a bedroom with you. Each Resident will have Exclusive Use Areas in the Apartment, described in paragraph 11 (Allocations and Exclusive Use Areas). Any patios or balconies accessed only through an Exclusive Use Area are considered part of the Exclusive Use Area. All areas that are not identified as Exclusive Use areas (e.g. the Apartment mailbox, living room, hallways, kitchen, bathroom(s) not identified as Exclusive Use Areas, and patios or balconies not accessed solely through an Exclusive Use Area) will be "Joint Use Areas", shared with the other co-residents.

**Assignments.** If an Apartment, bedroom, bathroom, or parking space is not identified in this Lease, we will advise you of your assignment at or before move-in.

**Relocation.** To the extent practical in our sole judgment, we will try to honor requests for residing in a particular bedroom or apartment.

**Resident's Request to Relocate.** You may change bedrooms with another resident in your Apartment if: (1) within __1__ days of your initial occupancy, we receive a joint request from you and another resident in your Apartment to exchange bedrooms (and all residents in both bedrooms approve the request); and (2) you comply with our procedures and required documentation. If later you request a transfer to another bedroom in your Apartment, and we

approve your request, you must complete the required documentation and pay a transfer fee of $ __350.00__ before we complete the actual transfer. A transfer to a bedroom or an Apartment other than the one you initially occupied may be made only with our prior written approval and for a similar fee.

**Owner's Discretion to Relocate.** We reserve the right at any time, upon seven days prior written notice to you and without your having to pay any transfer fee, to relocate you to another bedroom in the Apartment or to another Apartment within the Apartment community. We will assist you in moving your personal property and pay for rekeying if we require you to relocate.

**3. CO-RESIDENTS AND OCCUPANTS.** The bedroom will be occupied by you and (list all other co-residents not signing this Lease Contract):

The bedroom may also be occupied by the following occupants not signing a Lease Contract:

Other than a co-resident we assign, or an authorized occupant, no one else may occupy the bedroom. Other than authorized co-residents or authorized occupants, no one else may occupy the Apartment. Unauthorized persons must not stay for more than __3__ days without our prior written consent. If the previous space isn't filled in, two days per month is the limit.

**Guests.** You are responsible for the conduct of your guests, invitees, family members, and any other person that you allow to enter the property or Apartment, as if such conduct were your own. In the event that any such person acts in a manner which violates the Lease, such conduct shall also constitute a violation of the Lease by you. In the event of a disturbance in the Apartment, all occupants of the Apartment may be deemed by us to be responsible for such a Lease violation regardless of whether we are able to establish that such disturbance was caused by the guest of any specific occupant(s). You are responsible for ensuring that any such violation does not occur at any time. In the event we receive any complaints of unreasonable disturbances in the Apartment, you agree that we may limit the number of guests that may enter the Apartment at any one time.

**Disclaimer.** You have elected to enter into an Agreement to lease a portion of the Apartment only, and understand that other individuals, selected by us in our sole discretion, will be co-residing in the Apartment and Bedroom with you. You understand that we are solely providing you with the right to occupy the Apartment and do not make any representations as to the identity, background, or suitability of any co-resident. As you will not be responsible for the financial obligations of any co-resident, you understand that we are under no obligation to perform any screening of co-residents for any credit, prior tenant history, criminal background, or otherwise. In the event that any issues or disputes arise between you and any co-resident(s), it will be your responsibility to resolve such issues directly with the other co-resident(s) in a reasonable and Lease compliant manner. In no event will we be responsible for intervening in such disputes unless, in our sole discretion, we determine that the behavior of such co-resident constitutes a material violation of the Lease, and, in such event, you understand that our

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9

sole obligation will be to commence legal proceedings to evict such a person. You understand that during the pendency of such an action to recover possession, it may not be possible to bar the co-resident from the Apartment. While we will endeavor to transfer residents as provided herein, we are under no obligation to do so, and the failure to relocate you will not release you from your obligations as provided in the Lease.

**Rooming House.**   In no event shall the Apartment be deemed a rooming or lodging house and, in the event any state or local agency makes any determination to the contrary, we reserve the right to terminate the Lease upon seven (7) days' notice.

**4.  LEASE TERM AND TERMINATION NOTICE REQUIREMENT.** The initial term of the Lease Contract begins on the __1st__ day of __October__, __2019__, and ends at noon the __31st__ day of __July__, __2020__. This Lease Contract DOES NOT automatically renew. You must give at least __0__ days written notice of termination or intent to move-out if it is prior to the Lease Contract ending date. In the event you fail to provide us with the required number of days' written notice of termination and intent to vacate coinciding with the lease expiration date, as required by this paragraph and paragraph 39 (Move-Out Notice), you acknowledge and agree that you shall be liable to us for liquidated damages in the sum of $ _____ (equal to one month's rent) if we give you the advanced written notice required by Fla. Stat. § 83.575(2).

Owner or Owner's representative must notify Resident with written notice no later than __0__ days before the end of the lease term if the lease will not be renewed.

**Renewal.**  Prior to the expiration of this Lease Contract, you may be given an opportunity to sign a new Lease Contract or renewal Lease Contract and remain in your current bedroom. If you do not sign a new Lease Contract or renewal, your bedroom may be leased to another resident. If your bedroom is leased to another resident, you will not be able to sign a new Lease Contract or renewal for the same bedroom.

**5.  SECURITY DEPOSIT.**  Unless modified by addenda, your total security deposit is $ __0.00__, due on or before the date this Lease Contract is signed.

You may be required to pay a security deposit for all of your obligations under this Lease Contract. In the event you are required to pay a security deposit, it shall serve as partial security for all Resident's obligation under this Lease Contract. The security deposit will not be our limit of damages if you violate the lease contract.

**Security Deposit Deductions.**  If all Residents perform every obligation under the Lease, each Resident will receive a full refund of the Security Deposit paid by him or her. However, if each and every obligation under the Lease is not performed, deductions will be made from the Security Deposit. If we attribute a default under the Lease to a specific Resident (e.g. one Resident doesn't pay his/her proportionate share of the rent, or one Resident incurs a late charge, or we determine (in our sole discretion) that damage was caused by a single Resident), then the Resident responsible for that default will be financially responsible for that default, and we may make deductions from that Resident's proportionate share of the Security Deposit. If we do not attribute a default under the Lease to a specific Resident (e.g. damage to Joint Use Areas, or Apartment cleaning charges after the Residents vacate), we may deduct these charges from all Residents' Security Deposits, in the same proportion as each Resident's proportionate share for other shared obligations, described in the Allocations and Exclusive Use Areas paragraph. We will attempt (in our sole discretion) to fairly allocate responsibility among Residents. However, in any dispute between you and us regarding allocation, our decision will be binding to determine allocation of responsibility as between you and us. Our decision will not be binding between Residents, and if a Resident disagrees with our allocation, Residents may pursue claims between the Residents.

**Security Deposit Deductions and Other Charges.**  You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector and carbon monoxide detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed re-renting charges; packing, removing, or storing property removed or stored under paragraph 16 (Property Left in

Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 30 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for our time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract. You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 8 (Keys and Furniture) if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 35 (Default by Resident); and (3) a re-renting fee if you have violated paragraph 14 (Early Move-Out; Re-renting Charge)

Any security deposit or advance rent you paid is being held in one of the following three ways as indicated below (Landlord check one option):

☒  1.  In a separate NON-INTEREST bearing account for your benefit in the following bank: __Chase Bank__

whose address is __1500 W Fifth Avenue,__
__Columbus, OH 43212__
_____ ; OR

☐  2.  In a separate INTEREST bearing account for your benefit in the following bank: _____

whose address is _____
_____
_____

If an interest bearing account, you will be entitled to receive and collect interest in an amount of at least 75 percent of the annualized average interest rate payable on such account or interest at the rate of 5 percent per year, simple interest, whichever the landlord elects.

☐  3.  In a commingled account at the following bank _____

whose address is _____
_____
_____

provided that the landlord posts a surety bond with the county or state, as required by law, and pays you interest on your security deposit or advance rent at the rate of 5 percent per year simple interest.

_____ Initials of Resident. Resident acknowledges receiving a copy of F.S. 83.49(2)(d) which provides as follows:

YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.

IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.

YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.

THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

**6.  INDIVIDUAL LIABILITY FOR LATE CHARGES AND DAMAGES.** You are individually responsible and liable for late fees on your share of Rent, other obligations, and damage to the Apartment which we determine (in our sole discretion) was caused by you.  You are not responsible or liable for any of your co-resident's obligations as to their bedrooms and their rent payable to us.

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9

**7. JOINT AND SEVERAL (FULL) RESPONSIBILITY FOR OTHER AMOUNTS DUE.** Each resident of an Apartment is jointly and severally liable with the other co-residents of the Apartment for all Lease Obligations relating to Joint Use Areas and utilities (if applicable). Responsibility for damage to the Apartment that we do not determine (in our sole discretion) was caused by a specific Resident, and other amounts due under the Lease, will be joint and several (meaning that the Residents will each be fully responsible for 100% of these amounts).

**8. KEYS AND FURNITURE.** You will be provided ___1___ bedroom key(s), ___1___ apartment key(s), ___1___ mailbox key(s), and ___1___ access control devices for Gate Card _____ _____. Any resident, occupant, or spouse who is under court order to not enter the Apartment is, (at our option) no longer entitled to occupancy, keys, or other access devices.

Your Apartment will be *[check one]*: ☒ furnished or ☐ unfurnished. If the Apartment is furnished, the Apartment will also include all appliances, furniture and fixtures that we provide to you in your Exclusive Use and Joint Use Areas ("Personal Property"). ☐ If checked, the appliances and furniture are described in the Inventory/Move-In Move-Out form.

**9. RENT AND CHARGES.** *[Check one]*:
☐ You will pay $_____ per month for rent, in advance and without demand. Prorated rent of $___0.00___ is due for the remainder of *[check one]*: ☐ 1st month or ☐ 2nd month, on ___October 1___, ___2019___ *(year);* OR
☒ Your total rent for the Lease Contract term is $__7250.00__. It is payable in advance, without demand, in __1__ (number of installments) installments of $___725.00___. The first installment is due on ___October 1___ __2020__ *(year).* All remaining installments will be due on or before the first day of each month beginning _____November_____ __2020__ *(year).*

You will pay your rent at:
☒ at the on-site manager's office
☒ through our online payment site
☒ at Resident eMoney Order
_____
_____
_____

The stated rent amount is owed by you and is not the total rent owed by all co-residents. You must pay your monthly rent or installments on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House

(ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. We may, but are not required to, accept rent through direct debit, ACH or other electronic means established and approved by us. If you don't pay all rent on or before the ___3rd___ day of the month, you'll pay an initial late charge of $___35.00___ plus a late charge of $___5.00___ per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $___50.00___ for each returned check or rejected electronic payment, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, or fail to pay any rent, utilities or contractual fees due under a prior lease if this is a renewal lease, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

We and you agree that the failure to pay rent timely or the violation of the animal restrictions results in added administrative expenses and added costs to us, the same as if we had to borrow money to pay the operating costs of the property necessary to cover such added costs. We both agree that the late fee and animal violations provisions are intended to be liquidated damages since the added costs of late payments and damages in such instances are difficult to determine. We also both agree that the amount of late rent and animal violation fees charged are reasonable estimates of the administrative expenses, costs, and damages we would incur in such instances.

All of the foregoing charges will be considered to be additional rent.

**10. UTILITIES.** We'll pay for the following items, if checked:
☒ water   ☒ gas   ☐ electricity   ☐ master antenna
☒ wastewater   ☒ trash   ☒ Internet service   ☒ cable TV
☐ other utilities _____

If the Lease specifies that some utilities are billed directly to you by the utility provider, Apartment residents may decide among themselves whether to put the utilities in the names of one Resident or all Residents. For utilities that are billed to us by the utility provider, and which we provide and bill to you *(check one):* ☒ each Resident is responsible only for that Resident's proportionate share ☐ all Residents are jointly and severally (fully) responsible for the full cost of these utilities. Your per-person share of any submetered or allocated utilities for the apartment will be included as an itemized charge on a monthly billing to you. "Per person" is determined by the number of co-residents authorized to be living in the apartment at the time of the utility billing to you by us or our agent.

Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Landlord, they will be allocated first to non-rent charges and to rent last.

**11. ALLOCATIONS AND EXCLUSIVE USE AREAS.**

| Resident Name | Exclusive Use Areas | Proportionate Share of Monthly Rent | Proportionate Share for Other Obligations | Proportionate Share of Security Deposit |
|---|---|---|---|---|
| Julian Krowski | **Bedroom**<br>☐ Bedroom #_____<br>☐ A bedroom to be assigned by us in the future<br>**Bathroom**<br>☐ Bathroom #_____<br>☐ A bathroom to be assigned by us in the future<br>**Parking Space**<br>☐ Parking space(s)<br>#_____<br>#_____<br>#_____<br>☐ A parking space to be assigned by us in the future<br>**Other**<br>☐ _____<br>_____<br>(add a description of any other Exclusive Use Area) | $_____ | _____% | $_____ |

**12. INSURANCE.** *Our insurance does not cover the loss of or damage to your personal property.* You are *[check one]*:
☒ required to buy and maintain renter's or liability insurance *(see attached addendum)* or
☐ not required to buy renter's or liability insurance.
*If neither is checked, insurance is not required but is still strongly recommended. If not required, we urge you to get your own insurance*

for losses due to theft, fire, water damage, pipe leaks and other similar occurrences. Renter's insurance does not cover losses due to a flood.

In addition, we urge all Tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

© 2019, National Apartment Association, Inc. - 7/2019, Florida

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9

## Special Provisions and "What If" Clauses

**13. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

See special provisions on the last page

See any additional special provisions.

**14. EARLY MOVE-OUT.** Unless modified by an addendum, if you:

(1) move out without paying rent in full for the entire Lease term or renewal period; or
(2) move out at our demand because of your default; or
(3) are judicially evicted.

You will be liable for all rent owed at the time and as it becomes due under the terms of your lease agreement until the Apartment is re-rented.

**15. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the Apartment or Apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants or any other cause not due to our negligence or fault as allowed by law, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction. You'll defend, indemnify and hold us harmless from all liability arising from your conduct or that of your invitees, your occupants, your guests, or our representatives who at your request perform services not contemplated in this Lease. *Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from you or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.* We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver

**16. CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** All property in the Apartment or common areas associated with the Apartment is (unless exempt under state statute) subject to a contractual lien to secure payment of delinquent rent. The lien will attach to your property or your property will be subject to the lien at the time you surrender possession or abandon the premises. For this purpose, "Apartment" includes common areas associated with the Apartment and interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After Surrender or Abandonment.** We or law officers may, at our discretion, remove, dispose and/or store all property remaining in the bedroom, Apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you surrender, are judicially evicted or abandon the bedroom or Apartment.

THE LANDLORD IS NOT REQUIRED TO COMPLY WITH s. 715.104. BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

**Storage.** We may store, but have no duty to store, property removed after surrender, eviction, or abandonment of the bedroom or Apartment. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property

**17. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, or any other rent due under this lease we may end your right of occupancy and recover damages, attorney's fees, court costs, and other lawful charges.

**18. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in the Lease Contract, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under the provisions herein.

**19. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the Apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the Apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in the Lease Contract—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the Apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in the Lease Contract and the notice states that construction delay is expected and that the Apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in the Lease Contract for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**20. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may give us information about pending or actual connections or disconnections of utility service to your Apartment.

## While You're Living in the Apartment

**21. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on this Lease Contract.

**22. LIMITATIONS ON CONDUCT.** The Apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You,

your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude and/or "No Trespass" from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9

himself or herself as a resident, occupant, or guest of a specific resident in the community. Tenant agrees that landlord reserves the right to trespass any non-tenant from the leased premises and common areas.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

23. **PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; engaging in criminal activity that threatens the health, safety, or right to peaceful enjoyment of others in or near the apartment community (regardless of arrest or conviction); storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others. You agree to communicate and conduct yourself at all times in a lawful, courteous, and reasonable manner when interacting with our employees, agents, independent contractors, and vendors; other residents, occupants, guests or invitees; or any other person on the premises. You agree not to engage in any abusive behavior, either verbal or physical, or any form of intimidation or aggression directed at our employees, agents, independent contractors, and vendors; other residents, occupants, guests or invitees; or any other person on the premises. If requested by us, you agree to conduct all further business with us in writing. Any violation of this paragraph shall be a material breach of this Lease and will entitle us to exercise all rights and remedies under the lease and law.

24. **PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, recreational vehicles, and storage devices by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing: or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

25. **RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under the provisions herein, or by separate addendum, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, death or property purchase.

26. **MILITARY PERSONNEL CLAUSE.** Any "servicemember" as defined in Fla. Stat. §83.43(14) and Fla. Stat. §250.01 may terminate his or her tenancy by providing us with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after our receipt of the notice if the criteria as specified in Fla. Stat. §83.682 are met. Your notice to us must be accompanied by either a copy of the official military orders or a written verification signed by the servicemember's commanding officer.

After your move out, we'll return your security deposit, less lawful deductions. If you or any co-resident is a dependent of a servicemember covered by the U.S. Servicemembers Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service. Upon termination of your tenancy under this paragraph, the tenant is liable for prorated rent due through the effective date of the termination payable at such time as would have otherwise been required by the terms of the lease. The tenant is not liable for any other rent or damages due to the early termination of the tenancy as provided for in this paragraph.

27. **RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, *especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.*

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke detectors nor the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detectors or remove a battery without replacing it with a working battery, you may be liable to us under state statute for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector and carbon monoxide detectors, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. *We have no duty to remove any ice, water, sleet, or snow but may remove any amount with or without notice.* During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (we suggest at least 50 degrees). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property, and you specifically agree to indemnify landlord for any claims, damages, actions and causes of action resulting from your negligence. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We disclaim any express or implied warranties of security. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**Fire Protection.** Please check only one box: ☐ Fire protection is NOT available or ☒ Fire protection IS AVAILABLE. Description of fire protection available (not applicable unless the box is checked):

☒ Sprinkler System in apartment
☒ Sprinkler System in common areas
☒ Smoke detector
☐ Carbon monoxide detector
☒ Fire extinguisher
☐ Other (Describe): _____

**Building, Housing, or Health Codes.** We will comply with the requirements of applicable building, housing, and health codes. If there are no applicable building, housing, or health codes, we will maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9

good repair and capable of resisting normal forces and loads, and the plumbing in reasonable working condition. However, we are not responsible for the repair of conditions created or caused by the negligent or wrongful act or omission of you, a member of your family, or any other person on the premises, in the apartment, or in the common areas of the apartment community with your consent.

**28. CONDITION OF THE PREMISES AND ALTERATIONS.** *You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties.* You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements and/or added fixtures to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**Pest Control.** We will make reasonable provisions for the extermination of rats, mice, roaches, ants, wood destroying organisms, and bed bugs. If you are required to vacate the premises for such extermination, we shall not be liable for damages, but rent shall be abated. If you are required to vacate in order to perform pest control or extermination services, you will be given seven (7) days written notice of the necessity to vacate, and you will not be required to vacate for more than four (4) days. We may still enter your apartment as provided under the provisions of this Lease Contract and F.S. 83.53 or upon 12 hours notice to perform pest control or extermination services which do not require you to vacate the premises. You must comply with all applicable provisions of building, housing and health codes and maintain the apartment and adjacent common areas in a clean and sanitary manner. You must properly dispose of and promptly remove all of your garbage so as to prevent foul odors, unsanitary conditions, or infestation of pests and vermin in your apartment, adjacent common areas (such as breezeways), and other common areas of the apartment community.

**Waterbeds.** You are allowed to have a waterbed or flotation bedding systems provided it complies with any applicable building codes and provided that you carry flotation or renter's insurance which covers any damages which occur as a result of using the waterbed or flotation bedding system. You must provide us with a copy of the policy upon request. You must also name us as an additional insured at our request.

**29. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you. A request for maintenance or repair by anyone residing in your bedroom or apartment constitutes a request from all co-residents.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as

needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. *Rent will not abate in whole or in part.*

If we believe that fire, catastrophic damage, extermination issues, mold and mildew or any habitability issues whatsoever is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice.

**30. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. You must remove an unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize assistance animals needed because of a disability for you, your guests, and occupants pursuant to the parameters and guidelines established by federal, state, and local Fair Housing laws. We may require a written statement from a qualified professional verifying the need for the support and/or service animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of this Lease Contract. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**31. WHEN WE MAY ENTER.** Pursuant to Fla. Stat. §83.53, we may enter the dwelling unit at any time for the protection or preservation of the premises, in the case of an emergency, or if you unreasonably withhold consent. If you or any co-resident, guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the bedroom or apartment at reasonable times for the purposes listed in (2) below. If nobody is in the bedroom or apartment, then such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if:

(1) we provide you with written notice to enter at least 12 hours prior to the entry to take place between the hours of 7:30 a.m. and 8:00 p.m.; and

(2) entry is for: responding to your or any co-resident's request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; checking for water leaks; changing filters; testing or replacing smoke detector and carbon monoxide detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; disconnecting utilities involving bona fide repairs, emergencies or construction; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given);

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9

showing apartment to government representatives for the limited purpose of determining housing and fire ordinance compliance, and to lenders, appraisers, contractors, prospective buyers, or insurance agents; or any other reasonable business purpose.

**32. NOTICES.**   Notices and requests from you or any co-resident or occupant of the apartment constitute notice from all co-residents. Your notice of Lease Contract termination or intent to move out must be signed by you.

A notice from us to you to pay sums owed only by you, or regarding sale of property that belongs only to you or that was in your possession and care, will be addressed to you only. A notice from us that is intended only for you will be addressed only to you. A notice intended by us for all co-residents in your apartment may be addressed to "all residents" of your apartment. A notice intended by us for all residents in the apartment community may be addressed to "all residents."

## Replacements

**33. REPLACEMENTS AND SUBLETTING.**   Replacing a resident, sub-letting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing.

**Procedures for Replacement.**   If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign

an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**34. RESPONSIBILITIES OF OWNER.**   We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to this Lease Contract;
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above or other material provisions of the lease, you may terminate this Lease Contract and exercise other remedies under state statute only as follows:

(a) you must make a written request for repair, maintenance, or remedy of the condition to us, specifying how we have failed to comply with Florida law or with the material provisions of this lease and indicating your intention to terminate the lease if the violation is not corrected within seven (7) days after delivery of the notice;
(b) after receiving the request, we have a reasonable time to repair or remedy the condition, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;
(c) if our failure to comply with Florida law or other material provisions of the rental agreement is due to causes beyond our control and we have made and continue to make every reasonable effort to correct the failure to comply, you may also exercise other statutory remedies.

All rent must be current at the time you give us notice of noncompliance.

**35. DEFAULT BY RESIDENT.**   You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates this Lease Contract, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; or (6) any illegal drugs or paraphernalia are found in your apartment.

**Termination of Rental Agreement - Your Failure to Pay Rent Due.**   If you default by failing to pay rent when due and the default continues for three (3) days, not counting Saturday, Sunday, and court-observed legal holidays, after delivery of a written demand for payment of the rent or possession of the premises, we may terminate the rental agreement. Termination of this lease for non-payment of rent, or termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Termination of Rental Agreement - Your Failure to Comply with F.S. 83.52 or Material Provisions of the Lease.**

(1) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than failure to pay rent due), and the non-compliance is of a nature that YOU SHOULD NOT BE GIVEN AN OPPORTUNITY TO CURE or if your non-compliance CONSTITUTES

A SECOND OR CONTINUING NON-COMPLIANCE WITHIN TWELVE (12) MONTHS OF A SIMILAR VIOLATION, we may terminate the lease by delivering written notice specifying the nature of the non-compliance and our intention to terminate the lease. Upon receiving such a lease termination notice without opportunity to cure or constituting a second violation within 12 months, you will have seven (7) days from delivery of the notice to vacate the apartment and premises. Examples of non-compliance which are without opportunity to cure include, but are not limited to, destruction, damage, or misuse of our or other resident's property by your intentional acts or a subsequent or continued unreasonable disturbance.

(2) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than failure to pay rent due), and the non-compliance is of a nature that YOU SHOULD be given an opportunity to cure it, we may deliver a written notice to you specifying the nature of the non-compliance and notifying you that unless the non-compliance is corrected within seven (7) days of delivery of the notice, we may terminate the lease. If you fail to correct the violation within seven (7) days of receiving such notice or if you repeat same conduct or conduct of a similar nature within a twelve (12) month period, we may terminate your lease without giving you any further opportunity to cure the non-compliance as provided above. Examples of non-compliance in which we will give you an opportunity to cure the violation include, but are not limited to, unauthorized pets, guests, or vehicles, parking in an unauthorized manner, or failing to keep the apartment and premises clean and sanitary. We will also have all rights under Florida law and this lease to tow or remove improperly parked vehicles in addition to our remedy of terminating the lease for such violations.

Termination of this lease for non-compliance with F.S. 83.52 or material provisions of the lease, termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Holdover.**   You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) we may file a holdover eviction lawsuit pursuant to Fla. Stat. §83.58 to recover possession of the dwelling unit, double the amount of rent due for each day that you continue to holdover and refuse to surrender possession during the holdover period, breach of contract damages, attorney fees and court costs as may be applicable; or (3) at our option, we may extend the Lease Contract term—for up to one month from the date of notice of Lease Contract extension—by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.**   We may report unpaid amounts to credit agencies. If we, or a third-party debt collector we use, try to collect any money you owe us, you agree that we or the debt collector may call you on your cell phone and may use an automated dialer. If you default and move out early, you will pay us any amounts stated to be rental discounts in the special provisions, in addition to other sums due. Upon your default, we have all other legal remedies under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may

DocuSign Envelope ID: 12DF8835-7E16-4EA6-80CE-CECCF433F2D9

recover from the non-prevailing party attorney's fees and all other litigation costs. Attorney fees and all other expenses shall be deemed "costs". Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline. Unless modified by Addendum, you will also be liable for all of our actual damages related to your breach of the Lease Contract.

**Choice of Remedies and Mitigation of Damages.**  If you move out early, you'll be subject to all provisions herein and all other remedies. If we regain possession of the apartment as a result of your breach of the lease, or because you surrendered possession of the apartment, or because you abandoned possession of the apartment, or because we obtained possession through eviction proceedings, unless modified by Addendum, we may either (a) treat the lease as terminated and re-take possession FOR OUR OWN ACCOUNT; (b) re-take possession of the apartment FOR YOUR ACCOUNT and attempt in good faith to re-let it on your behalf; or (c) take no action to obtain possession or re-let the apartment and continue to collect rent from you as it comes due. If we take possession of the apartment for our own account, then you will have no further liability for rents under the remainder of the lease. If we take possession of the apartment for your account and attempt to re-let it, you will remain liable for the difference between the rental remaining due under the lease and the amount we are able to recover by making a good faith effort at re-letting the premises on your behalf. We are not required to make an election of which remedies we choose to pursue nor notify you of which remedies we will select.

**Landlord Remedies.**  If you fail to pay amounts due under this Lease Contract, or otherwise breach this Lease Contract, we (at our option), may choose to terminate the tenancy of you and your occupants (if any).  If only one Resident has breached the Lease Contract, and if we elect to terminate the tenancy of only the breaching Resident, the remaining residents agree to cooperate with us in terminating the tenancy of the breaching Resident. If we are able to locate a replacement Resident, the remaining Residents agree to cooperate with us in placing a replacement Resident in the Apartment, and will execute a Lease amendment to add the replacement Resident as an authorized Co-Resident.

**Disclaimer:**  If there is a breach of this Lease Contract and the law does not allow us to evict only the breaching resident, all co-residents may be evicted if only one resident breaches this Lease Contract.

**Remedies Cumulative.**  Except where limited or prohibited by law, any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

| General Clauses |
| --- |

**36. MISCELLANEOUS.**  You understand and acknowledge that neither we nor any of our representatives have authority to make any statements, promises or representations in conflict with or in addition to the information contained in this Lease Contract or by a separate written agreement signed by you and us, and we hereby specifically disclaim any responsibility for any such statements, promises or representations. You acknowledge that you have not relied upon any such statements, promises or representations in signing this Lease Contract and waive any rights or claims arising from any such statements, promises or representations. Any current or prior understandings, statements, representations and agreements, oral or written, including but not limited to, renderings or representations in brochures, advertising or sales materials and oral statements of our representatives, if not specifically expressed in this Lease Contract, Addenda or separate writing, are void and have no effect. You acknowledge and agree that you have not relied on any such items or statements in signing this Lease Contract. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. Any dimensions and sizes provided to you relating to the apartment are only approximations or estimates as actual dimensions and sizes may vary. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax or electronic signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, if you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you and we agree to waive any insurance subrogation rights. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. All provisions regarding our non-liability or non-duty apply to our employees, agents, and management companies. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

**RADON GAS:**  We are required by Florida Statute 404.056(5) to give the following notification to you. "Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon gas and radon testing may be obtained from your county health department."

**WAIVER OF JURY TRIAL.**  In order to minimize legal expenses and, to the extent allowed by law, you and we agree that the trial of any lawsuit based on statute, common law, equity, tort, personal injury, contract and/or in any way related to this Lease Contract, related to your tenancy, and/or related to your relationship with us, shall be to a judge and not a jury.  YOU AND WE VOLUNTARILY WAIVE ANY RIGHT TO A JURY TRIAL.

**CONDOMINIUM OR HOME OWNERS ASSOCIATION RULES:** To the extent applicable, you acknowledge that you have reviewed, understand and will abide by any Condominium or Home Owner Association Rules and Regulations ("HOA Rules") that may be in effect and promulgated from time to time. Your failure to abide by any HOA Rules is a material breach of this Lease Contract. A copy of the HOA rules is on file at the office.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

You affirmatively state that you are not a criminal sex offender.

**Obligation to Vacate.**  If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with the Lease Terms paragraph, and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

Although the property may currently be providing cable on a bulk basis to the resident, the property may, with 30 days notice to the resident, cease providing cable and the resident will contract directly with the cable provider for such services.

**FORCE MAJEURE:**  If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**Consent to Solicitation.**  To the extent permitted by applicable law, you hereby expressly authorize us, our representative(s), and any collection agency or debt collector (hereinafter collectively referred to as the "Authorized Entities") to communicate with you. The communication may be made through any method for any reason related to amounts due and owing under this Lease. You authorize any and all of the communication methods even if you will incur a fee or a cost to receive such communications. You further promise to immediately notify the Authorized Entities if any telephone number or email address or other unique electronic identifier or mode that you provided to any Authorized Entity changes or is no longer used by you.

© 2019, National Apartment Association, Inc. - 7/2019, Florida

DocuSign Envelope ID: 120F8835-7E16-4EA6-80CE-CECCF433F2D9

37. **PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under the provisions herein or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent— regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments. We do not have to accept and may reject, at any time and at our discretion, any

third party checks or any attempted partial payment of rent or other payments.

38. **ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

39. **MOVE-OUT NOTICE.** Unless you are moving out on the Lease Contract term ending date, you must give our representative advance written notice of your intention to vacate as required by the paragraph 4 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early (see paragraph 25 - Release of Resident) except if you are able to terminate the Lease Contract under a separate addendum, paragraphs 14 - Early Move Out, 25 - Release of Resident, and/or 26 - Military Personnel Clause. All notices to vacate must be in writing. If the notice does not comply with the time requirements of paragraph 4 (Lease Term), even if you move by the last date in the lease term, you acknowledge and agree that you shall be liable to us for liquidated damages in the sum of $_____ (equal to one month's rent) in accordance with Fla. Stat. §83.575(2). This liquidated damages amount is exclusive to insufficient notice under this paragraph and paragraph 4 (Lease Term), and does not limit collection rights with regard to other amounts potentially owed to us.

40. **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the fifteen (15) day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

41. **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

42. **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

43. **SURRENDER AND ABANDONMENT.**
   **Surrender.** You have surrendered the Apartment when all apartment keys and access devices listed in this Lease Contract have been turned in where rent is paid.

   **Abandonment.** As set forth in Fla. Stat. s. 83.59(3)(c), in the absence of actual knowledge of abandonment, it shall be presumed that you have abandoned the apartment if you are absent from the apartment for a period of time equal to one-half the time for periodic rental payments; however, this presumption does not apply if the rent is current or you have notified us, in writing, of an intended absence.

   Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the Apartment; determine any security deposit deductions; and remove property left in the Apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the Apartment, but do not affect our mitigation obligations.

## Severability, Originals and Attachments, and Signatures

44. **SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only, without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

45. **ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations.

> **You are legally bound by this document.**
> **Read it carefully before signing.**

Resident *(sign below)*

_____

Owner or Owner's Representative *(signing on behalf of owner)*

_____

Address and phone number of owner's representative for notice purposes

10121 Shephard St

Fort Myers, FL 33967

(239) 344-8628

Name and address of locator service *(if applicable)*

_____

Date form is filled out *(same as on top of page 1)*

09/18/2019

SPECIAL PROVISIONS (CONTINUED FROM PAGE 3). No money orders but Resident eMoney orders will be accepted. Location Premium: $10.00/mo. TH2 First Floor Premium: $15.00/mo. Reassignment Fee: 85% of one month of rent. Transfer Fee: $350.00. Reserved Parking: $25.00/mo. Pet Fee: see attached Pet Addendum. Key Replacement Fee: $50.00/fob or primary key and $25/bedroom or mail key. Lockout Fee (business hours): $20.00. Lockout Fee (not during business hours): $50.00. All unregistered/illegal pets will result in a $100.00 daily fee. Unregistered/illegal fees will stop once the pet is removed or registered. Un-Leashed Pet Fee: $50.00 per occurrence. Trash Removal: $50.00 per bag, per occurrence. Pet Waste Pick-up: $50.00 per occurrence. Noise Violation: $100.00 per occurrence. Illegal Guest/Occupant Fine: $100.00 per illegal guest/occupant, per occurrence. Smoking Fine: $100.00 per occurrence. Cigarette Littering Fine: $100.00 per occurrence. Short Term Premium Fees will vary. No exotic animals are permitted on the property.

_____

_____

_____

_____

_____

236323FA6EA94AF...

*Stacy Huss*
86A31DF7EC464A5...



**EXHIBIT C**

DocuSign Envelope ID: 79DAD7FC-6971-44D7-8F48-14DB03B347B7



# LEASE CONTRACT GUARANTY

*Do not sign this form unless you understand that you have the same liability as all residents for rent and other monies owed.*



## Lease Contract Information

**ABOUT LEASE:** Date of Lease Contract *(top left hand corner of Lease Contract)*.
__September 18, 2019__

Owner's name: **Fort Myers Reef Acquisitions, LLC**

Unit No._____ and street address of dwelling being leased: __10121 Shephard Street__

Resident names *(list all residents on Lease Contract)*:

__Julian Krowski__

City/State/Zip of above dwelling: __Fort Myers, FL 33967__

Monthly rent for dwelling unit: $_____

Beginning date of Lease Contract: __10/01/2019__

Ending date of Lease Contract: __07/31/2020__

## Guarantor Information
### Use for one guarantor only (can include spouse of guarantor)

**ABOUT GUARANTOR:** Full name *(exactly as on driver's license or govt. ID card)*

**Joeseph Kroswki**

Current address where you live:_____

Phone:_____
Alternate or cell phone:_____
Email address:_____

*(Please check one)* Do you ☐ own or ☐ rent your home?
If renting, name of apartments:_____

Manager's Name:_____ Phone: **(239) 344-8628**

**YOUR WORK:** Present employer: **Self**

Employer's address:_____

Work Phone:_____
Alternate phone:_____

**YOUR SPOUSE:** Full name *(exactly as on driver's license or govt. ID card)*:

_____

Driver's license # and state:_____
OR govt. photo ID card #:_____
Social Security #:_____
Birthdate:_____

**YOUR CREDIT/RENTAL HISTORY:**
Your bank's name:_____
City/State:_____
List major credit cards:_____
To your knowledge, have you, your spouse, or any resident listed in this Guaranty ever: ☐ been asked to move out? ☐ broken a rental agreement? ☐ declared bankruptcy? or ☐ been sued for rent? To your

Your Social Security #:_____
Driver's license # and state:_____
OR govt. photo ID card #:_____
Birthdate:_____ Sex: **M**
Marital Status: ☐ single ☐ married ☐ divorced ☐ widowed ☐ separated
Total number of dependents under the age of 18 or in college:_____
What relationship are you to the resident(s)? ☐ parent ☐ sibling ☐ employer ☐ other
Are you or your spouse a guarantor for any other lease? ☐ Yes ☐ No
If so, how many?_____

Email address:_____

How long?_____

Position:_____

Your gross monthly income is over: $ __33333.33__

Supervisor's name:_____ Phone:_____

Alternate or cell phone:_____
Email address:_____

Present employer:_____
How long?_____ Position:_____
Work phone:_____
Monthly gross income is over: $_____

knowledge, has any resident listed in this Guaranty ever: ☐ been sued for property damage? ☐ been convicted (or received an alternative form of adjudication equivalent to conviction) of a felony, misdemeanor involving a controlled substance, violence to another person or destruction of property, or a sex crime? Please explain:_____

In consideration for **us** to enter into the above Lease Contract with the Resident(s), as an inducement to us for making the lease, and other good and valuable consideration, the receipt of which is acknowledged, you guarantee all obligations of resident(s) under the Lease Contract, including but not limited to rent, late fees, property damage, relet costs, animal violation charges, reletting charges, utility payments and all other sums which may become due under the Lease Contract.

You agree that your obligations as guarantor will continue and will not be affected by amendments, modifications, roommate changes or deletions, unit changes, or renewals in the Lease Contract which may be agreed to from time to time between resident(s) and us. If we, as owner of the dwelling, delay or fail to exercise lease rights, pursue remedies, give notices to you, or make demands to you, as guarantor, you will not consider it as a waiver of our rights as owner, against you as guarantor. All of our remedies against the resident(s) apply to guarantor as well. All residents, guarantors and guarantor's spouse are jointly and severally liable. It is unnecessary for us to sue or exhaust

remedies against residents in order for you to be liable. This Guaranty is part of the Lease Contract and shall be performed in the county where the dwelling unit is located.

You represent that all information submitted by you on this Guaranty is true and complete. You authorize verification of such information via consumer reports, rental history reports, and other means. A facsimile signature by you on this Guaranty will be just as binding as an original signature. It is not necessary for you, as guarantor, to sign the Lease Contract itself or to be named in the Lease Contract. This Guaranty does not have to be referred to in the Lease Contract. You are ☐ required ☐ not required to have this Guaranty agreement notarized. If no box is checked, it is not required to be notarized. Payments under this Guaranty must be mailed to or made in the county where the dwelling unit is located. We recommend that you obtain a copy of the Lease Contract and read it. This Guaranty applies even if you don't do so. We will furnish you a copy of the Lease upon written request.



Page 1 of 2

© 2016, National Apartment Association, Inc. - 7/2016, Florida

DocuSign Envelope ID: 79DAD7FC-6971-44D7-8F48-14DB03B347B7

SPECIAL PROVISIONS.   The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____

After signing, please return the signed original of this Guaranty to **Fort Myers Reef Acquisitions, LLC**

at [street address or P.O. Box] **10121 Shephard St, Fort Myers, FL 33967**

or (optional) fax it to us at _____   Our telephone number _____ **(239)344-8628**

_____          _____
Date of signing Guaranty                    Date of signing Guaranty


_____          _____
Signature of Guarantor                      Signature of Guarantor's Spouse


State of Florida
County of _____

I certify that I know or have satisfactory evidence that _____
is/are the person(s) who appeared before me and acknowledged that he/she/they signed this instrument, and acknowledged it to be his/her/
their free and voluntary act for the uses and purposes mentioned in the instrument.

_____          _____
Dated                                       Printed Name of Notary Public


_____          _____
My Commission Expires                       Signature of Notary Public

Note: Signature of Guarantor and Guarantor's Spouse must be notarized if
lease is for more than one year.

┌─────────────────────────────────┐
│                                 │
│                                 │
│                                 │
│                                 │
│                                 │
└─────────────────────────────────┘
(Use above space for notary stamp/seal)


FOR OFFICE USE ONLY

Guarantor(s) signature(s) was (were) verified by owner's representative.

  Verification was by ☐ phone or ☐ face-to-face meeting.          Date(s) of verification _____

  Telephone numbers called (if applicable) _____

  Name(s) of Guarantor(s) who was (were) contacted _____

  Name of Owner's Representative who talked to Guarantor(s) _____



DocuSigned by:
Stacy Hess

Florida/National Apartment Association Official Form, July 2016
© 2016, National Apartment Association, Inc.



**EXHIBIT D**

*Law Offices of*
JOSEPH F. KROWSKI, ESQ.

JOSEPH F. KROWSKI, ESQ.
JASON C. HOWARD, ESQ.

30 COTTAGE STREET
BROCKTON, MASS. 02301
Tel. (508) 587-3701
Fax (508) 588-6035

June 16, 2020

Stephen W. Sobota, Sole Officer & CEO
Hunter Warfield &
Hunter Warfield of New England
4620 Woodland Corporate Blvd.
Tampa, FL 33614

Re:   Client:                              Joseph F. Krowski, Jr.
      Alleged Original Creditor:           The Reef
      Hunter Warfield Account No:          7964418
      Dispute Balance:                     $6,058.84

Dear Mr. Sobota:

Hunter Warfield and its subsidiary Hunter Warfield of New England (referred to collectively as
"Hunter Warfield") are individually and collectively engaging in unfair and deceptive acts and
practices in the manner in which it claims that my client, Joseph F. Krowski, Jr. ("Mr.
Krowski"), is in debt to The Reef in an amount of $6,058.84.   I am therefore serving this notice
and demand pursuant to the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 USC
§1692 *et seq*.  Also, because Hunter Warfield conducts trade or commerce in Massachusetts and
transacts business with Massachusetts residents, this notice and demand is also served upon you
under the Massachusetts Consumer Protection Law, Mass. Gen. L. ch. 93A.   By this notice and
demand I seek to resolve this matter expeditiously without the need of pursuing alternative
remedies as provide in Law and Equity.

By correspondence dated April 23, 2020, Hunter Warfield alleges that Mr. Krowski owes a
"current balance" of $6,058.84.   The alleged debt is premised on a  "Student Housing Lease
Contract" and "Lease Contract Guaranty" each dated September 18, 2019.  Claim that a debt is
owed pursuant to the above referenced documents is a violation of the FDCPA.  The claim also
violates Mass. Gen. L. ch. 93A. Pursuant to G. L. ch. 93A, the Attorney General of the
Commonwealth has promulgated regulations regarding fair debt collection practices in the
Commonwealth.  *See* 940 CMR 7.01 *et seq*.  Both the FDCPA and the Mass. Attorney General's
regulations prohibit, "the collection of any amount…unless such amount is expressly authorized
by the agreement creating the debt or permitted by law."

The alleged $6,058.84 "current balance" Hunter Warfield seeks to collect is a fraudulent debt.  It
is neither expressed in any agreement nor permitted by law.  In fact, Mr. Krowski never had an
expressed agreement with The Reef.  As is clearly depicted on the "Student Housing Lease
Contract" and "Lease Contract Guaranty" forms, Mr. Krowski never signed either document.
The signature line for the guarantor, the date, and the notary are all blank.  It is a fundamental
principle of law that a lease and guaranty have no legal effect unless in writing and signed by the
person to be charged.

1

Therefore, the claim that Mr. Krowski owes a debt is patently false, deceptive, and misleading. Furthermore, the circumstances suggest Hunter Warfield is acting in bad faith. The "Lease Contract Guaranty" document clearly states "Do not sign (emphasis added) this form unless you understand that you have the same liability as all residents for rent and other monies owed." Mr. Krowski did not sign the form. By the express terms of the very document he has no liabilities or obligations.

Mr. Krowski explained the entire situation to Hunter Warfield in an email dated April 23, 2020. Mr. Krowski purposefully did not sign the documents because he had no intention to enter into a contract to lease an apartment that his son had not seen in-person.   His son has issues with anxiety.  Mr. Krowski's wife, Lori Krowski, advised a Reef employee that Mr. Krowski would not sign the document until his son viewed the apartment. The Reef employee requested Mr. Krowski initial the documents to hold the apartment for viewing. Mr. Krowski had no qualms about initialing the document because he understood full well that initials do not bind one to a lease.

Mr. Krowski's son did view the apartment.  He was not comfortable. The complex was too crowded and congested for him in light of his anxiety.  Mr. Krowski's wife spoke to a Reef employee and explained their decision.  No one stated or suggested that Mr. Krowski would be receiving a bill based on documents he never signed.

As further evidence of bad faith, on April 24, 2020, Mr. Krowski received notice from a bank with which he was in the process of refinancing that he needed to explain Hunter Warfield's entry on his credit report.   This has caused and will continue to cause Mr. Krowski actual damages.

In accordance with the FDCPA and Mass. Gen. L. ch. 93A, I hereby demand the following as reasonable settlement of this dispute: withdraw the claim of an alleged debt in the amount of $6,058.84 and close the matter with a zero balance.   I further demand that Hunter Warfield remove any and all entries from Mr. Krowski's credit report.

You have thirty (30) days to respond in writing to this notice and demand with a reasonable offer in settlement. If one is not forthcoming, Mr. Krowski will avail himself of all avenues of relief, which may include a lawsuit. If a lawsuit is filed, he may seek, among other things, statutory civil penalties, actual damages, double or triple damages, punitive damages, and attorney's fees. He may also refer your debt collection actions to the Attorney General of the Commonwealth of Massachusetts and the appropriate Federal Agency.

Very Truly Yours,
LAW OFFICE OF JOSEPH F. KROWSKI


JASON C. HOWARD, ESQUIRE


**By Certified Mail R.R.R.   7019 0160 0000 2684 7625**

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT** *Reef*
*Domestic Mail Only*

7019 0160 0000 2684 7625

TAMPA, FL 33614

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

| Certified Mail Fee | $3.55 | | 0379 |
| | | $2.85 | 04 |
| Extra Services & Fees (check box, add fee as appropriate) | | | |
| ☐ Return Receipt (hardcopy) | $ | $0.00 | |
| ☐ Return Receipt (electronic) | $ | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ | $0.00 | Here |
| ☐ Adult Signature Required | $ | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | | |
| Postage | | $0.55 | |
| $ | | | |
| Total Postage and Fees | | $6.95 | |

Sent To Steven Sobota, CEO Hunter Warfield of N.E.
Street and Apt. No., or PO Box No. 4630 Woodland Corporate Blvd.
City, State, ZIP+4® Tampa FL 33614

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

KROWSKI JR REEF

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

STEVEN W. SOBOTA, CEO
HUNTER WARFIELD OF N.E.
4620 WOODLAND CORP. BLVD.
TAMPA, FL 33614

9590 9402 5007 9063 0452 76

2. Article Number (Transfer from service label)

7019 0160 0000 2684 7625

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                     ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss                              NEW BEDFORD SUPERIOR COURT
                                         DOCKET NO.

```
_____
                                )
JOSEPH F. KROWSKI JR.,          )
      Plaintiff                 )
                                )
v.                              )
                                )
HUNTER WARFIELD OF              )
NEW ENGLAND, INC., and          )
TRANS UNION, LLC,               )
      Defendants                )
_____ )
```

## MOTION FOR A PRELIMINARY INJUNCTION AND
## REQUEST FOR A SHORT ORDER OF NOTICE

The Plaintiff, Joseph F. Krowski Jr., moves the Court,

pursuant to Mass. R. Civ. P. 65(b), to issue a Preliminary

Injunction enjoining the Defendants;  Hunter Warfield of New

England, Inc., and Trans Union, LLC; as follows:

1.  To cease and desist publishing and/or reporting
    on the Plaintiff's credit report and/or credit
    score an alleged debt in the name of "The Reef"
    as the "Original Creditor" with an alleged
    "Current Balance" as of April 23, 2020, in the
    amount of $6,058.84; and

2.  To remove said alleged debt from the Plaintiff's
    credit report and/or credit score.

As reasons therefor, based on the allegations of fact and

law of the Plaintiff's Verified Complaint for Damages and

Injunctive Relief with Jury Demand,  Mr. Krowski, as moving

party, has demonstrated the following:

1

a.   He enjoys a reasonable likelihood of success on the merits
     of his Verified Complaint;

b.   He runs a substantial risk of irreparable harm if a
     preliminary injunction is not granted; and

c.   On balance, any harm to the Defendant by a preliminary
     injunction is outweighed by the harm to the Plaintiff
     should an injunction not be granted.

See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609,
616-17 (1980); GTE Products Corp. v. Stewart, 414 Mass. 721, 723
(1993).

     **Wherefore**, the Plaintiff moves that this Motion

for a Preliminary Injunction be Allowed following a Short Order

of Notice.

                              By his Attorney,



                              JASON C. HOWARD, ESQUIRE
                              30 Cottage Street
                              Brockton, MA 02301
                              (508) 587-3701
                              BBO: 654172

Dated: August 10, 2020

2

| SUMMONS AND ORDER OF NOTICE | DOCKET NUMBER<br>2073CV00548 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|
| CASE NAME:<br>Krowski, Jr., Joseph F vs. Hunter Warfield of New England, Inc et al | | Marc J. Santos, Clerk of Court<br>Bristol County |
| To:<br>**Hunter Warfield of New England, Inc** | | COURT NAME & ADDRESS<br>Bristol County Superior Court - New Bedford<br>441 County Street, 1st floor<br>New Bedford, MA 02740 |

To the above named defendant(s):

      You are hereby summoned and required to serve upon:

             **Jason C Howard, Esq.**
             **Law Office of Joseph F Krowski**
             **30 Cottage St**
             **Brockton, MA 02301**

      an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at New Bedford either before service upon plaintiff's attorney or within a reasonable time thereafter.

      Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

TO BE CONDUCTED VIA ZOOM NOT IN PERSON
MEETING ID: 160 552 7951
DIAL BY YOUR LOCATION
+1 669 254 5252 US (SAN JOSE)
+1 646 828 7666 US (NEW YORK)

          **Date:** 09/16/2020

          **Time:** 11:00 AM

          **Event:** Hearing on Preliminary Injunction

   **Session Location:** Civil B (New Bedford) / Upper Courtroom

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>08/19/2020 | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>**Hon. Judith Fabricant** | ASSOCIATE JUSTICE<br>**Hon. Merita A Hopkins** | ASSISTANT CLERK<br>X |
|---|---|---|---|

**RETURN OF SERVICE**

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

PARTY NAME:

X

Date/Time Printed: 08-19-2020 11:16:56                              SCV027\ 04/2017

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

**PLAINTIFF(S):**   Joseph F. Krowski

**ADDRESS:**   Easton, MA

**COUNTY**   Bristol

**DEFENDANT(S):**   Hunter Warfield of New England & Trans Union, LLC

**ATTORNEY:**   Jason C. Howard, Esq.

**ADDRESS:**   30 Cottage Street, Brockton MA 02301

**ADDRESS:**   Hunter Warfield of New England: 4620 Woodland Corporate Blvd.,

Tampa, Florida 33614.

Trans Union, LLC: 555 West Adams Street, Chicago IL 60661

**BBO:**

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B99 | Unfair & Deceptive Debt Collection Practices | F | [X] YES   [ ] NO |

**\*If "Other" please describe:**

**Is there a claim under G.L. c. 93A?**
[X] YES   [ ] NO

**Is this a class action under Mass. R. Civ. P. 23?**
[ ] YES   [X] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ......................................................................... $_____
    2. Total doctor expenses ......................................................................... $_____
    3. Total chiropractic expenses ................................................................. $_____
    4. Total physical therapy expenses .......................................................... $_____
    5. Total other expenses (describe below) ................................................ $_____
                       Subtotal (A): $_____

B. Documented lost wages and compensation to date .................................................. $_____
C. Documented property damages to date .................................................................. $_____
D. Reasonably anticipated future medical and hospital expenses ................................ $_____
E. Reasonably anticipated lost wages ........................................................................ $_____
F. Other documented items of damages (describe below) ............................................ $_____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                  TOTAL (A-F):$_____

#### CONTRACT CLAIMS
(attach additional sheets as necessary)
[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

                                  TOTAL: $_____

**Signature of Attorney/ Unrepresented Plaintiff: X** _____   **Date:** Aug 10, 2020

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** _____   **Date:** Aug 10, 2020

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>**2073CV00548** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>Krowski, Jr., Joseph F vs. Hunter Warfield of New England, Inc et al | Marc J. Santos, Clerk of Court<br>Bristol County |
|---|---|

| TO:  Hunter Warfield of New England, Inc<br>4620 Woodland Corporate Blvd<br>Tampa, FL 33614 | COURT NAME & ADDRESS<br>Bristol County Superior Court - New Bedford<br>441 County Street, 1st floor<br>New Bedford, MA 02740 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                         DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/16/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 12/15/2020 | |
| All motions under MRCP 12, 19, and 20 | 12/15/2020 | 01/14/2021 | 02/15/2021 |
| All motions under MRCP 15 | 12/15/2020 | 01/14/2021 | 02/15/2021 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/14/2021 | | |
| All motions under MRCP 56 | 07/13/2021 | 08/12/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/10/2021 |
| Case shall be resolved and judgment shall issue by | | | 08/17/2022 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**08/17/2020** | ASSISTANT CLERK<br>**Dina Swanson** | PHONE<br>**(508)996-2051** |
|---|---|---|

Date/Time Printed: 08-17-2020 15:26:30                                                    SCV026\ 08/2016